IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MARQUISE HENDERSON,

      Movant,

v.                       **Case No. 3:20-cv-00763**
                           **Case No. 3:17-cr-00100-02**

UNITED STATES OF AMERICA,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court is Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255.[1] (ECF No. 470). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). (ECF No. 472). Having determined from a thorough review of the record that Movant clearly is not entitled to relief under 28 U.S.C. § 2255, the undersigned **FINDS** no basis for an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970). For the reasons set forth below, the undersigned respectfully **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 be **DENIED,** and this civil action be **DISMISSED, with prejudice,** and removed from the docket of the Court.

---

[1] The ECF numbers used herein are taken from Henderson's underlying criminal action, *United States v. Lamerique et al.,* Case No. 3:17-cr-00100-02 (Mar. 21, 2019) ("*Henderson I*").

## I.   <u>Procedural History</u>

### A.   *Indictment, conviction, and sentencing*

On June 6, 2018, Henderson was charged with federal drug and gun crimes in an eight-count third superseding indictment ("third superseding indictment") by a grand jury sitting in the United States District Court for the Southern District of West Virginia, Huntington Division ("the Court"). (ECF No. 279). Pursuant to a plea agreement, Henderson agreed to plead guilty to Counts One and Six of the third superseding indictment, which alleged violations of 21 U.S.C. § 846, conspiracy to distribute a quantity of heroin and 50 grams or more of methamphetamine, and 21 U.S.C. § § 922(g)(1) and 924(a)(2), unlawful possession of a firearm by a felon. (ECF No. 372 at 2). In exchange for his guilty plea, the government promised to dismiss the remaining counts against him. (*Id.*). In addition, Henderson agreed that he would argue for a base offense level of no less than 36 and adjusted offense level of 38, and he waived his right to appeal or collaterally attack his conviction or sentence except on the basis of ineffective assistance of counsel so long as his sentence fell within the agreed-upon range. (*Id.* at 8–9). The plea agreement also included a stipulation of facts in which Henderson admitted that he "conspired with multiple individuals" to distribute methamphetamine and heroin; that he and his codefendant, Karl Lamerique, obtained methamphetamine and distributed it throughout the District; that he was aware of and had access to firearms at a residence used to distribute the substances; and that he knew he was a felon forbidden from possessing a firearm following convictions for weapons possession and assault under New York criminal law. (*Id.* at 12–13).

On December 12, 2018, Henderson appeared before the Court and pled guilty to Counts One and Six. (ECF No. 369). At the hearing, after finding Henderson competent

and capable of entering an informed plea, the Court asked Henderson a series of questions concerning his satisfaction with his attorney, Michelle Fox ("defense counsel"). (ECF No. 426 at 5–6). Henderson confirmed that he had had enough time to discuss his case with defense counsel; that she had been able to answer his questions; and that he was "completely satisfied with the legal advice" she provided. (*Id.* at 6). The Court, by colloquy, determined that Henderson understood the terms of the plea agreement and allowed it to be filed as part of the record. (*Id.* at 6–10).

As to Count One, conspiracy under § 846, the Court explained the elements the government would be required to prove beyond a reasonable doubt if the parties proceeded to trial, and Henderson affirmed that he believed he was guilty of the offense. (*Id.* at 12–13). The Court did likewise for Count Six, possession of a firearm by a person convicted of a crime punishable by a term of imprisonment exceeding one year under § 922(g)(1) and § 924(a)(2). (*Id.* at 13–15). After Henderson recounted in his own words what he did that comprised the offense conduct, he confirmed that he had read the stipulation of facts in the plea agreement and reviewed it with his defense counsel, agreeing that he understood it and it was accurate and truthful. (*Id.* at 17). Relevant to this matter, the Court received assurance from Henderson that he participated in a conspiracy with numerous named individuals including Lamerique to buy, store, and distribute drugs. (*Id.* at 18–20). The Court also asked Henderson if it was true he had been convicted of two felonies in New York at a time before he possessed firearms, and Henderson answered affirmatively. (*Id.* at 20). The Court found a sufficient factual basis for the guilty plea. (*Id.* at 30).

The Court next inquired as to whether Henderson understood the potential penalty exposure caused by his conviction, including minimum terms of incarceration

and supervised release, and that he was relinquishing his right to appeal or collaterally attack his judgment. (*Id.* at 30–35). After reviewing with Henderson the additional rights he forfeited upon pleading guilty and receiving confirmation that no one coerced him into pleading guilty, the Court found that Henderson understood his rights and his plea was voluntary. (*Id.* at 35–38). The Court adjudged Henderson guilty of Counts One and Six. (*Id.* at 39).

Henderson appeared before the Court for a sentencing hearing on March 19, 2019. (ECF No. 407). The Court, after hearing testimony from Henderson's codefendant Lamerique, overruled Henderson's objection to the presentence report which attributed responsibility to Henderson for at least 4.5 kilograms of methamphetamine. (ECF No. 424 at 46–48). The Court granted a downward variance, however, sentencing Henderson to a total of 238 months imprisonment for Count One and 120 months for Count Six, with sentences to be served concurrently followed by five years of supervised release. (*Id.* at 64–65).

### B.    *Appeal to the Fourth Circuit*

On March 28, 2019, Henderson filed a notice of appeal. (ECF No. 414). In his brief to the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit"), Henderson argued that the Court should have rejected Lamerique's testimony during his sentencing hearing as not credible and should have granted a downward variance based on disparities in sentencing for different drug types. *United States of America v. Henderson*, No. 19-4208 (4th Cir. Aug. 20, 2019) ("*Henderson II*"), at ECF No. 13. The government moved to dismiss, as Henderson waived his right to appeal except on certain narrow bases. *Id.*, at ECF No. 20. On August 20, 2019, the Fourth Circuit granted the government's motion and dismissed Henderson's appeal because of the

appeal waiver. *Id.*, at ECF Nos. 24, 25; (ECF No. 434). Henderson unsuccessfully petitioned the Fourth Circuit for a rehearing or a rehearing en banc. *Id.*, at ECF Nos. 27, 30.

### C.    *Instant motion under § 2255*

#### i.    *Motion and attached exhibits*

On November 19, 2020, Henderson filed the instant motion to vacate or set aside his federal sentence pursuant to 28 U.S.C. § 2255 and an accompanying memorandum of law. (ECF Nos. 470, 471). In his form motion, Henderson asserts three grounds for relief from the judgment in his criminal case, the structure of which differs somewhat from his memorandum of law. (ECF No. 470). He contends that the Court lacked jurisdiction to enter judgment in his criminal case because the guilty plea was not supported by a sufficient factual basis. In addition, Henderson claims that his defense counsel was constitutionally ineffective for failing to attack the judgment on appeal on the grounds that Henderson lacked of knowledge of his felon status and that the Court's lack of jurisdiction. (*Id.* at 4, 5, 7). The substance of the remaining claims asserted in the form motion are also contained in the memorandum of law along with more analysis. The undersigned will examine the grounds as presented in that document in more detail.

Henderson asserts four grounds for relief in his memorandum of law. First, he contends that defense counsel rendered ineffective assistance by failing to "raise contemporary objections to the sufficiency of evidence used to establish the factual basis." (ECF No. 471 at 3). Henderson asserts that the quantities of drugs sold by his codefendant to a confidential informant are "inadmissible for purposes of conspiracy." (*Id.*). He states that because the penalty range for a conspiracy conviction "derives from

5

the substantive offense conduct...the applicable range should not apply" and defense counsel was ineffective for failing to raise such objections. (*Id.*). According to Henderson, defense counsel "turned a blind eye" towards an opportunity to challenge the Court's jurisdiction to enter judgment based on an insufficient factual basis at both the trial and appellate levels. (ECF No. 471 at 3–4).

In Ground Two, Henderson argues that defense counsel was ineffective for not arguing on appeal that his conviction for being a felon in possession of a firearm was unconstitutional. (*Id.* at 4). He contends that defense counsel should have raised the absence of evidence demonstrating that Henderson was aware of his status as a felon as required by *Rehaif v. United States*, 139 S. Ct. 2191 (2019) ("*Rehaif*"). In support, Henderson states that his prior conviction did not require him to "spend more than a year and one day in jail." (*Id.* at 4, 12). Henderson asserts that his imprisonment for violating § 922(g) was thus "unwarranted," and caused him "substantial[] prejudice." (*Id.* at 12).

In Ground Three, Henderson argues that defense counsel was ineffective for "failing to know the laws in relation to her client['s] defense." (*Id.*). According to Henderson, defense counsel failed to argue that there was an insufficient factual basis for his guilty plea to the offenses based on *United States v. McCoy*, 895 F.3d 358 (4th Cir. 2018) ("*McCoy*"). (*Id.*). He contends that defense counsel's "lack of knowledge" of relevant law indicates that the guilty plea was not voluntary. (*Id.* at 6).

Finally, in Ground Four, Henderson asserts that defense counsel was ineffective for failing to object to the United States Sentencing Commission guidelines ("USSC guidelines") range for his offense because the drug quantity "should not have been factored in" to his range calculation. (*Id.* at 6–7). He claims that defense counsel's

refusal to raise these issues constitutes cause for his failure to assert them earlier, and he is now prejudiced and "stigmatized" by defense counsel's ineffectiveness. (*Id.* at 7).

In addition to his memorandum of law, Henderson includes a series of letters from defense counsel along with undated letters to defense counsel, one unsigned and one apparently from another inmate, Sean Dudley.[2] (ECF No. 471 at 5, 8–11, 13–16). In her letters, defense counsel advised Henderson that she filed a notice of appeal at his request but warned that the government would likely oppose the appeal by seeking to enforce the waiver of appeal rights included in his plea agreement. (*Id.* at 13–14). She noted that appealing could result in other consequences, including the creation of an opportunity for the government to seek to void the plea agreement. (*Id.*).

In an unsigned, undated letter, the author appears to reply to defense counsel's letter, supplying defense counsel with what he asserts are helpful authorities to establish a basis for Henderson's challenge to his conviction and sentence, *McCoy* and *Rehaif*. (*Id.* at 8–10). In a letter dated December 18, 2019, defense counsel acknowledged that Henderson requested to file a petition for a writ of certiorari with the Supreme Court of the United States ("Supreme Court"). (*Id.* at 15). After explaining her view that *McCoy* and *Rehaif* are inapplicable to the facts of Henderson's case, defense counsel informed Henderson that she was filing a motion to withdraw from representation because she believed such a petition would lack merit based on her understanding of the relevant law. (*Id.* at 15–16).

In an undated letter, Sean Dudley addressed defense counsel and provided citations to numerous cases which he characterized as useful to Henderson's defense,

---

[2] It is unclear when or if defense counsel received these letters.

7

insinuating that defense counsel's failure to argue on Henderson's behalf, using these authorities, amounted to "constitutional ineffective assistance of counsel" under federal standards. (*Id.* at 11, 5).

### ii.     Respondent's response

On January 29, 2021, Respondent answered the Court's order to show cause as to why relief should not issue, providing several grounds for denying Henderson's § 2255 motion. (ECF No. 477). First, Respondent argues that, insofar as Henderson's motion raises claims beyond ineffective assistance of counsel, his motion should be summarily denied because Henderson waived his right in the plea agreement to collaterally attack his judgment. (*Id.* at 10–15). Respondent points out that, in addition to the plea agreement Henderson signed, at his plea hearing the District Judge confirmed that Henderson understood he gave up his right to challenge his guilty plea, conviction, or sentence in a collateral attack, except on the basis of ineffective assistance of counsel. (*Id.* at 12–13).

Next, while conceding that *Rehaif* is retroactive on collateral review, Respondent contends that any claims besides ineffective assistance of counsel have been procedurally defaulted and Henderson does not qualify for an exception based on actual innocence or a showing of cause and prejudice. (*Id.* at 15–23). Respondent argues that because Henderson failed to raise the jurisdictional issue or a claim under *Rehaif* with the Court, or the Fourth Circuit on direct appeal, he has effectively defaulted these claims. (*Id.* at 15). Respondent argues that Henderson cannot show that any *Rehaif* error "had a substantial effect on his proceedings," noting that Henderson conceded that he knew of his status as a felon. (*Id.* at 23–25). Respondent asserts that "[a]ny error here, even if structural, does not require automatic vacatur of

the defendant's guilty plea." (*Id.* at 25). Acknowledging that a recent Fourth Circuit decision, *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020), ruled that *Rehaif* error is a structural error requiring vacatur of a guilty plea on direct review, Respondent contends that Henderson cannot show that he was actually prejudiced by the error. (*Id.* at 25–27). Accordingly, procedural default remains fatal to Henderson's claim on collateral review. (ECF No. 477 at 27).

Finally, Respondent argues that, given Henderson's sworn responses during his guilty plea hearing, he has not established that he received ineffective assistance of counsel. (*Id.*). As to Henderson's claim that counsel was ineffective for failing to argue that his conviction was invalid based on *Rehaif*, Respondent notes that *Rehaif* was decided after Henderson's guilty plea and sentencing and counsel's failure to raise a new rule of law is not constitutionally deficient. (*Id.* at 29). Respondent disputes Henderson's claim that defense counsel should have challenged the Court's jurisdiction on the ground that there was an insufficient factual basis for his § 846 conviction. (*Id.* at 29–30). Agreeing that Henderson could not be convicted of conspiracy based on conduct engaged in solely with a confidential informant, Respondent stresses that Henderson admitted to offense conduct that involved multiple individuals. (*Id.* at 30–31). Therefore, Respondent deduces that defense counsel had no reason to challenge the sufficiency of the factual basis for Henderson's plea. (*Id.* at 31–32). Respondent also disagrees that defense counsel was ineffective for failing to challenge the USSC guidelines range because Henderson stipulated to the drug quantities attributable to his conduct. Moreover, defense counsel objected, albeit unsuccessfully, to the attribution of additional methamphetamine amounts. (*Id.* at 32–33). Respondent asks the Court to deny Henderson's motion. (*Id.* at 35).

### iii.    *Henderson's reply*

On April 5, 2021, Henderson filed a reply to Respondent's arguments. (ECF No. 481). Therein, he insists that the Court may hear his claim that the Court lacked jurisdiction to enter judgment because § 2255(b) allows defendants to do so and parties cannot waive their right to challenge the Court's jurisdiction, maintaining that additional briefing on this issue is required. (ECF No. 481 at 2–4). Henderson posits that *McCoy* allows him to challenge his judgment on jurisdictional grounds. (*Id.* at 4–5). He asserts that the "prior conviction relied upon for purposes of [§ 922(g)] conviction[] did not meet the federal definition of a felony offense" because the First Step Act changed the definition of a felony to mean a crime for which a defendant *actually served* more than a year in prison. (*Id.* at 6). He reiterates his position that the factual basis for his guilty plea is insufficient to support his conviction. (*Id.* at 9–13).

As to his claims of ineffective assistance of counsel, Henderson asserts again that defense counsel was ineffective by failing to argue using the legal authorities he cites, including *McCoy*, *Rehaif*, and the ostensibly relevant change to the definition of a felony created by the First Step Act. (*Id.* at 13–14). Henderson contends that defense counsel had a duty to consult with him, but he was not informed of the First Step Act's effect on his § 922(g) charge. (*Id.* at 14). He argues that he "did not have the required predicate offense" because he was not incarcerated for more than one year for his prior conviction. (*Id.* at 15). According to Henderson, defense counsel failed to raise these defenses on appeal, resulting in a longer sentence. (*Id.* at 15–16). He reiterates his request for relief or further briefing. (*Id.* at 16).

## II.    <u>**Standards of Review**</u>

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. *Wall v. Kholi*, 562 U.S. 545, 552-53 (2011). To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; or the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. CRIM.A. 2:02-CR-65, Civ.A. 2:05-CV-91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006). Consistent with the Rules Governing Section 2255 Proceedings for the United States District Courts ("Rules"), the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, & 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See* Rule 8(a). If the movant is clearly unable to state a claim that entitles him to relief, the court may deny the motion without an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970). Furthermore, "vague and conclusory allegations contained in a § 2255 petition may be disposed of without further investigation by the District Court." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013).

## III.   <u>Discussion</u>

Henderson pled guilty to Counts One and Six of the third superseding indictment, but challenges the validity of this plea because he contends it was not supported by a sufficient factual basis and defense counsel provided ineffective assistance. A criminal defendant's guilty plea is only constitutionally valid "to the extent it is voluntary and intelligent." *Bousley v. United States*, 523 U.S. 614, 618 (1998). Therefore, before accepting a guilty plea, a district court must conduct a plea colloquy under Rule 11 of the Federal Rules of Criminal Procedure to determine that the defendant comprehends the nature of the charges to which he is pleading guilty, the maximum possible penalty that he could face, any mandatory minimum penalty for such crime(s), and the rights that he relinquishes by pleading guilty. *Hernandez v. United States*, No. 3:14-CR-82-RJC-8, 2018 WL 3381429, at *6 (W.D.N.C. July 11, 2018) (citing Fed. R. Crim. P. 11(b)(1) and *United States v. DeFusco*, 949 F.2d 114, 116 (4th Cir. 1991)). In addition, the district court must "ensure that the plea is supported by an independent factual basis and is not the result of force, threats, or promises outside the plea agreement." *Id.* (citing Fed. R. Crim. P. 11(b)(2), (3)). "An appropriately conducted Rule 11 proceeding raises a strong presumption that the defendant's plea is final and binding and a defendant's solemn declarations in open court affirming a plea agreement carry a strong presumption of verity that presents a formidable barrier in any subsequent collateral proceedings." *United States v. Swinney*, No. 1:13-CR-422 (LMB), 2015 WL 9593651, at *4 (E.D. Va. Dec. 31, 2015) (quoting *United States v. Lambey*, 974 F.2d 1389, 1394 (4th Cir. 1992) and *United States v. White*, 366 F.3d 291, 295-96 (4th Cir. 2004)) (internal markings omitted). "Accordingly, a § 2255 movant who accepts a plea agreement 'is bound by the

representations he makes under oath during [his] plea colloquy' unless he presents 'clear and convincing evidence' contradicting those representations. *Id.* (quoting *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992)).

### A.    Effect of waiver of right to collaterally attack

In the plea agreement, Henderson waived his right to collaterally attack his judgment on any basis except ineffective assistance of counsel. The Fourth Circuit has already held that Henderson's waiver of rights is valid as to his appellate rights. *Henderson II*, ECF No. 24. It stands to reason that the contemporaneous waiver of the right to collaterally attack the judgment is likewise sound. *United States v. Edison*, No. 20-4112, 2021 WL 5412340, at *1 (4th Cir. Nov. 19, 2021) ("Where, as here, the Government seeks to enforce the appeal waiver and has not breached the plea agreement, we will enforce the waiver if it is valid and the issue being appealed falls within the waiver's scope.") (citing *United States v. Blick*, 408 F.3d 162, 168 (4th Cir. 2005)). Therefore, the undersigned **FINDS** that Henderson's waiver of collateral attack rights is valid and will be enforced here as to all claims within its scope. *Fields v. Att'y Gen. of State of Md.*, 956 F.2d 1290, 1294 (4th Cir. 1992) ("[A] voluntary and intelligent guilty plea forecloses federal collateral review of allegations of antecedent constitutional deprivations.").

Henderson makes continual reference to *McCoy*, a Fourth Circuit case that held that "even valid appeal waivers do not bar claims that a factual basis is insufficient to support a guilty plea." *McCoy* at 364. In that case, criminal defendant Alex McCoy pled guilty to a drug trafficking conspiracy as part of a plea agreement in which he also waived his right to appeal "except on the basis of ineffective assistance of counsel and prosecutorial misconduct." *Id.* at 360. The Fourth Circuit first determined that

McCoy's waiver was valid because it was knowing and intelligent, but ultimately held that a challenge based on the sufficiency of the factual basis for the plea was outside the scope of the waiver because the factual basis implicates the knowing, voluntary nature of the decision to plea. (*Id.* at 362–64). However, the Fourth Circuit pressed that "[n]othing about this rule will undermine the finality of the plea-bargaining process or spur time-consuming appeals," noting that "[i]n most instances, a valid plea agreement will be accompanied by a sworn factual basis, which will preclude defendants from simply denying their guilt." *Id.* at 364.

Respondent posits that Henderson waived his right to challenge his criminal judgment on any basis except ineffective assistance of counsel. (ECF No. 477 at 10–15). The rule in *McCoy* is only squarely applicable in the context of an appellate waiver; nevertheless, it stands to reason that a challenge to the sufficiency of the factual basis for a plea would also fall outside the scope of a waiver of the right to collaterally attack a judgment in the context of a § 2255 motion. However, courts within the Fourth Circuit have held that a challenge to the voluntariness of a guilty plea pursuant to *McCoy* is available only if the issue was already raised on direct appeal unless a movant can demonstrate cause for the default and actual prejudice to him or actual innocence as required by *Bousley v. United States,* 523 U.S. 614, 622 (1998). *See United States v. Lunsford*, No. 1:18-CR-390, 2021 WL 66606 (M.D.N.C. Jan. 7, 2021) ("Even if the Court assumes that Mr. Lunsford's claim is not barred by his waiver under *McCoy*, the voluntariness or intelligence of a guilty plea can only be attacked collaterally if first challenged on direct review or upon a showing of cause and prejudice or actual innocence."); *Ross v. United States*, No. 1:15CR271-1, 2019 WL 5396028 (M.D.N.C. Oct. 22, 2019), *appeal dismissed*, 830 F. App'x 413 (4th Cir. 2020) (holding that

14

collateral attack on voluntariness of plea is procedurally barred). Assuming without deciding that a challenge to the sufficiency of the factual basis for a plea is outside the scope of a collateral attack waiver, the undersigned **FINDS** that the claim is subject to general rules of procedural default.

### B.    *Procedural default of issues not presented on appeal*

The parties concur that Henderson has not waived his right to challenge his conviction on the basis that his counsel was constitutionally ineffective, and it is well-settled that such a claim generally is *not* subject to the ordinary rules of procedural default to the extent the claim implicates the voluntariness of a guilty plea. *Fields v. Att'y Gen. of State of Md.*, 956 F.2d 1290, 1296 (4th Cir. 1992). Therefore, the undersigned will only consider the effect of procedural default as to Henderson's contentions concerning the sufficiency of the factual basis for his guilty plea.

On appeal to the Fourth Circuit, Henderson challenged the Court's finding that his codefendant, Lamerique, provided credible testimony and argued that Henderson should have been given a downward variance due to disparities in sentencing for different drug types. *Henderson II*, ECF No. 13. Notably, Henderson did not take issue with the sufficiency of the factual basis for his plea on direct appeal, although it appears that at some point he presented the idea to defense counsel in hopes that she would mount such a challenge on his behalf. (ECF No. 471 at 8–10, 15). As a general rule "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice" or actual innocence. *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States,* 523 U.S. 614, 622 (1998). "The procedural-default rule is neither a statutory nor a constitutional requirement, but it is a doctrine adhered to by the courts to conserve judicial resources and to respect the

law's important interest in the finality of judgments." *Massaro*, 538 U.S. at 504.

Henderson cannot establish cause or prejudice in connection with his failure to dispute the sufficiency of the factual basis on appeal, nor does he show that he is actually innocent. As to cause, Henderson contends that cause for the default exists because defense counsel "would not raise [the issues] for lack of laws and procedures relevant to my case." (ECF No. 471 at 7). The Supreme Court specifically rejected a § 2255 movant's attempt to circumvent procedural default rules under a theory that movant's otherwise-effective defense counsel failed to raise the issue on appeal, holding that such failure does not constitute cause for default. *Murray v. Carrier*, 477 U.S. 478, 488 (1986) ("So long as a defendant is represented by counsel whose performance is not constitutionally ineffective...we discern no inequity in requiring him to bear the risk of attorney error that results in a procedural default."). As discussed in greater detail below, defense counsel was not constitutionally ineffective, and Henderson does not provide "some objective factor external to the defense," such as the unavailability of a factual or legal basis for the claim, that would constitute cause. *Id.*; *see infra* Section III.D. Defense counsel's decision not to challenge the sufficiency of the factual basis does not constitute cause for the default allowing Henderson to pursue such an attack on collateral review. Even if it were, Henderson cannot demonstrate any resultant prejudice because, as discussed below, such a claim lacked merit at the time, as it does now.

Furthermore, the only assertion Henderson provides that might be construed as a claim of actual innocence excusing procedural default is that his convictions under New York law do not constitute felonies rendering his firearm possession illegal, and thus he was not actually guilty of violating § 922(g). (ECF No. 481 at 6). The record

belies this self-serving contention for reasons thoroughly examined below. *See infra*, Section III.D. For the purposes of assessing the effect of procedural default, it is clear that Henderson provides no evidence that he is actually innocent of either offense for which he was convicted.

Because Henderson makes no showing of cause and prejudice or actual innocence, the undersigned **FINDS** that all of Henderson's claims are procedurally defaulted except for those related to ineffective assistance of counsel. However, even if the Court were to find that Henderson's failure to challenge the sufficiency of the factual basis were excused, he would nevertheless not be entitled to relief.

### C.     *Sufficiency of factual basis for guilty plea*

Henderson would not be entitled to relief based on the insufficiency of the factual basis for his plea even if he were not barred from raising the issue. Assuming *arguendo* that *McCoy* applies to collateral attacks such as a § 2255 motion and the claim was not procedurally defaulted under the above-mentioned standard, Henderson would not be entitled to relief from his judgment on this basis because the factual basis supporting his guilty plea as to both counts is clearly sufficient. Before a court may enter judgment on a plea of guilty, it must find a sufficient factual basis to support the plea. *United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997). In making the Rule 11(b)(3) determination, the district court "possesses wide discretion," and it "need only be subjectively satisfied that there is a sufficient factual basis for a conclusion that the defendant committed all of the elements of the offense." *United States v. Ketchum*, 550 F.3d 363, 366 (4th Cir. 2008) (quoting *Mitchell*, 104 F.3d at 652). A "stipulated recitation of facts alone [is] sufficient to support a plea ..." *United States v. Wilson*, 81 F.3d 1300, 1308 (4th Cir. 1996). So long as "the district court could

reasonably have determined that there was a sufficient factual basis based on the record before it," there will be no finding of an abuse of discretion. *United States v. Mastrapa*, 509 F.3d 652, 659-60 (4th Cir. 2007). To repeat, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Attorney Gen.*, 956 F.2d 1290, 1299 (4th Cir. 1992); *see also Estepp v. Ballard*, No. CIV.A. 3:08-0102, 2010 WL 3702594, at *7 (S.D.W. Va. Sept. 16, 2010) ("[W]hen evaluating a claim of ineffective assistance of counsel post guilty plea, statements made under oath affirming satisfaction with counsel are binding absent clear and convincing evidence to the contrary.") (citing *Blackledge v. Allison*, 431 U.S. 63, 97 (1977)).

### i.    *Count One, conspiracy to distribute drugs*

While Respondent does not address the relevance of *McCoy* by name, it asserts that the factual basis provided by Henderson as part of his plea agreement and Henderson's admission to certain conduct at his plea hearing were sufficient to support his guilty plea as to the § 846 violation. (ECF No. 477 at 30–32). Respondent is correct. To be convicted of an offense under § 846 for conspiracy to distribute illegal drugs, the government must prove that (1) an agreement to distribute drugs existed between two or more persons; (2) the defendant knew of the conspiracy; and (3) the defendant knowingly and voluntarily became part of the conspiracy. *See United States v. Burgos*, 94 F.3d 849, 857 (4th Cir. 1996); *United States v. Collazo*, 732 F.2d 1200, 1205 (4th Cir.1984), *cert. denied*, 469 U.S. 1105 (1985).

At the plea hearing, Henderson agreed that the stipulation of facts accompanying his plea agreement was accurate and truthful. (ECF No. 426 at 17). He affirmed that Lamerique and other individuals helped him distribute

18

methamphetamine and other drugs in the area. (*Id.* at 18–19). The Court found a sufficient factual basis to support Henderson's guilty plea as to Count One. (*Id.* at 30). The stipulation of facts provides more detail about Henderson's involvement in the conspiracy with several other individuals. Contrary to Henderson's assertions, no procedural rule rendered the quantities of drugs Henderson admitted to distributing as part of the conspiracy inadmissible. While a confidential informant indeed played a part in detecting and developing evidence of the offense conduct, as Henderson himself stated under oath, others were involved in the illegal conspiracy and he can be held criminally liable for his conduct. The undersigned **FINDS** that a sufficient factual basis supports Henderson's conviction for Count One and his guilty plea was not rendered involuntary.

### ii.    *Count Six, unlawful possession of a firearm*

In his reply, Henderson takes issue with the sufficiency of the factual basis for his plea of guilty as to illegal possession of a firearm pursuant to § 922(g). (ECF No. 481 at 6). He claims first that the First Step Act changed the definition of a felony offense "for purposes of recidivism" to include only those convictions for which a defendant was actually sentenced to imprisonment for more than one year rather than "being exposed to more than [one] year in jail." (*Id.*). Furthermore, Henderson asserts that he was not made aware that "his knowledge was important to the essential elements finding." (*Id.*). Respondent disagrees, contending that Henderson indeed had knowledge of his prohibited status as evinced by his own statements. (ECF No. 477 at 24).

As an initial matter, any change to the definition of a felony in the First Step Act has no bearing whatsoever on Henderson's conviction under § 922(g). Section

922(g)(1) provides, in relevant part, that it is unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm. While Henderson's offense under Count Six is sometimes informally called "felon in possession of a firearm," the statutory language itself delineates the class of individuals subject to the prohibition and does not refer to "felony" as defined in any other statute or provision. Henderson does not dispute that his convictions in New York were punishable by imprisonment for a term exceeding one year although he states that he spent less than a year in jail for the crimes.

Henderson's claim that the factual basis for his plea was insufficient because he was not made aware that the government was required to prove he knew he had been convicted of a crime punishable by imprisonment for a term exceeding one year is without merit. During the pendency of Henderson's appeal, the law incident to the elements the government was required to prove to secure conviction under § 922(g) changed with the Supreme Court's decision in *Rehaif*. The *Rehaif* holding upset existing Fourth Circuit precedent by holding that the "knowingly" requirement in § 924(a)(2) applies both to a defendant's possession of a firearm and to the relevant status rendering such possession illegal. At the time of Henderson's guilty plea, the government did not have to prove that Henderson knew he had been convicted of a qualifying crime.

Even so, the stipulations Henderson provided as part of his plea agreement provide a sufficient factual basis for Henderson's guilty plea under § 922(g) *even under the standard announced in* Rehaif, and arguably in excess of what the present-day understanding of § 922(g) requires the government to prove. Henderson stipulated that at the time of the relevant conduct, he "knew" he "was not permitted to possess

firearms based on [his] status as a convicted felon." (ECF No. 372 at 13). Henderson has never denied that he possessed firearms or made a showing that his prior crimes were not punishable by more than a year in prison, and he affirmed that he not only knew he was a felon but also *knew he was not allowed to possess firearms because of his felon status.*

Respondent is correct that any error on the part of the Court would not have had a "substantial and injurious effect" on Henderson's conviction. *United States v. Smith*, 723 F.3d 510, 517 (4th Cir. 2013). No inadequacy of the factual basis for his guilty plea alters the Court's well-founded conclusion that the plea was made voluntarily. Therefore, while the rules of procedural default already foreclosed a grant of relief on the basis that the plea was not made voluntarily, the undersigned **FINDS** that Henderson cannot establish any deprivation of his rights based on the factual basis underlying his voluntary plea of guilty.

### D.    *Ineffective assistance of counsel*

Henderson claims that his Sixth Amendment right to the effective assistance of counsel was denied because of defense counsel's failure to make certain claims on his behalf before this Court and on appeal. The Sixth Amendment to the United States Constitution guarantees every criminal defendant "the right to the effective assistance of counsel." *Strickland v. Washington,* 466 U.S. 668, 680 (1984). Under *Strickland,* a criminal defendant can prove ineffective assistance of counsel by meeting the requirements of a two-pronged test. *Id.* at 687. This two-prong test requires the defendant to show that his counsel's performance was objectively unreasonable, and that the defendant was prejudiced by counsel's deficient performance. *Id.*

Henderson pled guilty to two counts in the third superseding indictment. In the

context of a guilty plea, the Court considers whether the plea was constitutionally valid despite the alleged ineffective assistance. The standard for determining whether a guilty plea is constitutionally valid is whether the guilty plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *See North Carolina v. Alford*, 400 U.S. 25, 31 (1970). When considering this standard, courts should look to the totality of the circumstances surrounding the guilty plea. *Burket v. Angelone*, 208 F.3d 172, 189–90 (4th Cir. 2000). Where a petitioner "alleges that ineffective assistance of counsel caused the guilty plea itself to be unknowing or involuntary, analysis of such claims must be part of the court's inquiry into the validity of the guilty plea." *United States v. Holbrook*, 613 F. Supp. 2d 745, 761 (W.D. Va. 2009); *see also Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1296 (4th Cir. 1992) ("A guilty plea does not bar collateral review of allegations of ineffective assistance of counsel in so far as the alleged ineffectiveness bears on the voluntariness of the guilty plea."). Statements made during a hearing to accept a guilty plea are afforded a strong presumption of veracity and subsequent attacks that contradict these statements may generally be dismissed as frivolous. *U.S. v. Lemaster,* 403 F.3d 216, 221–22 (4th Cir. 2005). As the Fourth Circuit explained:

> [A] defendant's solemn declarations in open court ... carry a strong presumption of verity ... because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. ... Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.

*Id.*

In addition, Henderson challenges the performance of defense counsel as to her

arguments in his direct appeal to the Fourth Circuit. The undersigned analyzes these claims with the caveat that "appellate counsel is given significant latitude to develop a strategy that may omit meritorious claims in order to avoid burying issues in a legal jungle." *Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (citing *Griffin v. Aiken*, 775 F.2d 1226, 1235 (4th Cir. 1985)).

### i.    Failure to challenge the Court's jurisdiction

Henderson claims that defense counsel was ineffective for failing to challenge the Court's jurisdiction to enter judgment based on the lack of a sufficient factual basis to support his guilty plea. (ECF No. 471 at 3–4). He criticizes her failure to argue the issue before the Court or on direct appeal in *Henderson II*. (*Id.* at 4). As the undersigned detailed above, the factual basis for Henderson's plea was entirely sufficient and therefore Henderson cannot establish that defense counsel was deficient or that any prejudice resulted from her refusal to pursue a challenge based on *McCoy*. *See Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005) (holding that an attorney is not ineffective for failing to raise a futile objection). Furthermore, the letters from defense counsel that Henderson attaches, wherein she explains her position that *McCoy* is inapplicable to Henderson's appeal, are all but determinative of the issue. Defense counsel's "strategic choice[]" not to argue for relief on the basis of *McCoy* after examining the relevant law and facts is "virtually unchallengeable." *Strickland v. Washington*, 466 U.S. 668, 690–91 (1984).

As to defense counsel's exclusion of the issue on appeal, the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal citations and quotation

marks omitted). The letters from defense counsel Henderson submits as exhibits are patently supportive of the conclusion that defense counsel deliberately selected arguments for appeal that were, in her professional judgment, more likely to be successful than those advanced by Henderson or anyone writing to her on his behalf. Even if, as Henderson repeatedly insists, a meritorious argument under *McCoy* could have been advanced on appeal, Henderson provides no evidence to indicate that defense counsel's refusal to raise it was anything but "a mere miscalculation of the likelihood of success" which "does not constitute constitutionally ineffective representation." *United States v. Mikalajunas*, 186 F.3d 490, 493 (4th Cir. 1999) (citing *Smith*, 477 U.S. at 534–35). The undersigned **FINDS** that defense counsel was not ineffective for failing to challenge the Court's power to enter judgment.

### ii.     *Failure to argue for relief based on Rehaif*

In Ground Two, Henderson argues that defense counsel was ineffective for not arguing on appeal that his sentence for being a felon in possession of a firearm was unconstitutional under *Rehaif*. (ECF No. 471 at 4, 12). This claim fails for at least two reasons. First, as discussed above, Henderson executed a valid waiver of his appellate rights which included the right to challenge the judgment except on certain narrow grounds, a waiver the Fourth Circuit enforced when Henderson attempted to challenge his judgment on appeal. *Henderson II*, ECF Nos. 24, 25. *Rehaif* was not decided until June 21, 2019, well after Henderson and the government had finished briefing their arguments on appeal from his criminal conviction in *Henderson II*, but a few weeks before the Fourth Circuit rendered its decision denying the appeal on the basis of the appellate waiver on August 20, 2019. While counsel may have technically had an opportunity to raise the issue on appeal, a challenge pursuant to *Rehaif* all but certainly

would have elicited an identical result as such a challenge also falls squarely within the appellate waiver. No exception to the general rules favoring enforcement of a validly-executed appellate waiver exist for challenges made pursuant to subsequent developments in the law. *United States v. Blick*, 408 F.3d 162, 170 (4th Cir. 2005); *United States v. Copeland*, 707 F.3d 522, 529 (4th Cir. 2013) (citing *Blick* and enforcing valid appellate waiver after guilty plea despite change in applicable sentencing law).

Furthermore, a recent Supreme Court decision overruling the Fourth Circuit's decision in *United States v. Gary*, 954 F.3d 194 (4th Cir. 2020), reinforces the conclusion that a challenge to Henderson's guilty plea based on *Rehaif* would not have resulted in an vacatur of the conviction, especially given Henderson's criminal history. *Greer v. United States*, 141 S. Ct. 2090 (2021). Henderson would not have been entitled to reversal on appeal under plain-error review unless he could show that his substantial rights were affected in that "if the District Court had correctly advised him of the *mens rea* element of the offense, there is a 'reasonable probability' that he would not have pled guilty." *Id.* at 2097. As the Supreme Court explained:

> In felon-in-possession cases, a *Rehaif* error is not a basis for plain-error relief unless the defendant first makes a sufficient argument or representation on appeal that he would have presented evidence at trial that he did not in fact know he was a felon. When a defendant advances such an argument or representation on appeal, the court must determine whether the defendant has carried the burden of showing a "reasonable probability" that the outcome of the district court proceeding would have been different.

*Id.* at 2100.

The record, including his admissions at the plea hearing and through the stipulation of facts, is replete with admissions from Henderson establishing that he knew he was a felon and nothing but the bare assertions presented in the instant motion indicate otherwise. Accordingly, Henderson cannot show any prejudice

resulting from defense counsel's failure to challenge the constitutionality of his conviction or sentence under § 922(g) and, clearly, this supposed deficiency had no bearing on Henderson's voluntary decision to plead guilty.

Second, defense counsel was not ineffective for failing to attack Henderson's conviction under *Rehaif* on appeal because she exercised sound professional judgment to determine that it did not apply to the facts of Henderson's case. Henderson himself provided a letter from defense counsel in which she explained to Henderson her view that *Rehaif* did not apply to his case because he stipulated that he possessed the firearms and acknowledged he was previously convicted of multiple felonies, and nothing in the record indicates that he was unaware of his felon status. (ECF No. 471 at 16). Defense counsel's thorough examination of *Rehaif* and determination that an appeal on that basis would lack merit is exactly the kind of reasoned professional judgment that is "virtually unchallengeable" in an inquiry under *Strickland*. *Strickland v. Washington*, 466 U.S. 668, 690–91 (1984). Therefore, the undersigned **FINDS** that Henderson is not entitled to relief on this ground.

### iii.    Failure to "know the laws" related to Henderson's defense

In Ground Three, Henderson argues that defense counsel was ineffective for "failing to know the laws in relation to her client['s] defense." (ECF No. 471 at 12). Henderson premises this accusation on defense counsel's apparent defiance of his opinion that *McCoy* and *Rehaif* applied to his case. (*Id.* at 4). This ground is simply redundant of Grounds One and Two, as Henderson indicates no failure to "know the laws" besides those already thoroughly examined. As discussed, defense counsel was not ineffective for failing to make claims under *McCoy* and *Rehaif,* in part, because

such claims were and are meritless.

In his reply, Henderson argues that his counsel was ineffective for not consulting with him about the applicability of changes to the First Step Act's definition of "felony." (ECF No. 481 at 13–14). As explained above, any changes in the definition of felony under that law have no applicability to Henderson's conviction under § 922(g). *See infra*, Section III.C.ii. Defense counsel therefore was not ineffective for failing to consult with him about a change in the definition of felony as he describes. The record reflects no misunderstanding or ignorance of the law incident to Henderson's case, and the undersigned **FINDS** that Henderson is not entitled to relief on this ground.

### iv.    *Failure to object to USSC guidelines range*

In Ground Four, Henderson asserts that defense counsel was ineffective for failing to object to the USSC guidelines range for his offense because the drug quantities found in a storage unit connected with the crime "should not have been factored in" to his range calculation. (ECF No. 471 at 6–7). He asserts that such drugs were "not established to have been tied to any offense conduct" related to his § 846 conviction. (*Id.*). This claim is utterly meritless. Henderson stipulated as part of his plea agreement that he and his co-conspirators used the aforementioned storage unit "to store large quantities of methamphetamine," and that "3,269 grams" of methamphetamine were recovered from it as part of the government's investigation. (ECF No. 372 at 13–14). The plea agreement also allowed Henderson to argue for a base offense level of no less than 36 and adjusted offense level of 38. (*Id.* at 8). At his plea hearing, Henderson agreed that for sentencing purposes he should be held accountable for 1.5 kilograms of methamphetamine. (ECF No. 426 at 22). Defense

counsel had no nonfrivolous reason to object to the inclusion of the drug quantities seized from the storage unit in the sentence range calculation and was not ineffective for failing to do so.

Furthermore, as Respondent notes, defense counsel *did* object to the inclusion of additional drug quantities factored into the sentence calculation. (ECF No. 477 at 33). At Henderson's sentencing hearing, defense counsel sought to minimize Henderson's penalty exposure by objecting to the inclusion of 21 pounds of methamphetamine attributed to him, but after hearing testimony from Henderson's codefendant Lamerique and reviewing the evidence, the Court overruled her objection. (ECF No. 407). Henderson's unfounded assertions show no deficiency on the part of defense counsel as to her advocacy for him to receive the lowest possible sentencing range calculation, let alone any deficiency that indicates that his guilty plea was less than voluntary. The undersigned accordingly **FINDS** that Henderson is not entitled to relief on this ground.

In sum, the undersigned **FINDS** that Henderson does not demonstrate that any deficiency in the performance of defense counsel affected the knowing, voluntary nature of his guilty plea and further **FINDS** that defense counsel was not constitutionally ineffective. Henderson has failed to establish by a preponderance of the evidence that his judgment was imposed improperly pursuant to § 2255. Accordingly, his motion under § 2255 should be denied.

## IV.    <u>Proposal and Recommendations</u>

For the reasons set forth above, the undersigned respectfully **PROPOSES** that the District Court accept and adopt the findings proposed herein and **RECOMMENDS** that Movant's Motion to Vacate, Set Aside, or Correct Sentence

pursuant to 28 U.S.C. § 2255, (ECF No. 470), be **DENIED,** and that this civil action be **DISMISSED, with prejudice,** and removed from the docket of this Court.

 The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

 Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers, and Magistrate Judge Eifert.

 The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

 **FILED**:  December 16, 2021

Cheryl A. Eifert
United States Magistrate Judge

29